UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA E. BAKER-TUTTLE, | ) | Case No. 1:06 CV 2839 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Victoria E. Baker-Tuttle filed this appeal under 42 U.S.C. §405(g) and §1383(c)(3) seeking judicial reversal of the Social Security Administration's denial of disability insurance benefits and supplemental security income. At issue is the July 2, 2003 decision by an ALJ which became the final decision of the Commissioner following the Appeals Council's denial of request for review. See 20 C.F.R. §404.981; §416.1481. Baker-Tuttle has filed her fact sheet and statement of errors as instructed and the Commissioner has responded. The parties have further consented to the jurisdiction of the undersigned for entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

The ALJ found Baker-Tuttle suffered "severe" impairments of chronic fatigue syndrome, back pain radiating down her left leg, mild lumbar canal stenosis of L5-S1 level with bilateral nerve root compression, depression and decreased concentration (TR. 38). The ALJ determined that from September 29, 1999 through August 21, 2001, the plaintiff was able to sit two hours, stand five hours, walk three hours and lift and carry a maximum of 20 pounds (TR. 42). She was slightly

1:06 CV 2839                                                2

limited in her capacity to bend, push, pull and climb stairs, but was unable to stoop, work at heights or around machinery. She was moderately limited in her ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance, complete a normal workday and work week without interruptions and respond to changes in the work setting. From July 23, 2002 forward, the plaintiff retained the capacity to sit and stand/walk four to six hours, lift and carry a maximum of 25 pounds and was moderately limited in her ability to push, pull, bend, reach, handle and perform repetitive foot movements. Based on these limitations, the plaintiff could perform her past work as an assembler. From August 21, 2001 through July 23, 2002 the plaintiff met listing 1.04, which was less than a 12 month period.

Baker-Tuttle challenges this conclusion maintaining that she is disabled and that the ALJ erred in finding her complaints of chronic fatigue were not credible and that the ALJ erred in failure to acknowledge the report and opinion from the treating psychiatrist, Dr. Patterson.

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantiality is based upon the record taken as a whole. *Barney v. Secretary of Health and Human Services*, 743 F.2d 448 (6th Cir. 1984); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*,

1:06 CV 2839                                              3

987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Secretary*, 893 F.2d 106, 108 (6th Cir. 1989); *Richardson*, 402 U.S. at 401.

> In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record `taken as a whole.' *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and "must take into account whatever in the record fairly detracts from its weight." *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464-65, 95 L.Ed. 456 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

*Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Failure to Acknowledge Opinion From Treating Physician Regarding Chronic Fatigue:*

"Medical opinions are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis . . ." 20 C.F.R. §404.1527(a)(2); §416.927(a)(2). As *Wilson v. Commissioner* instructs, the ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.*, 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2); §416.927(d)(2). On this last point, supportability of the medical opinion of disability has long been a key factor in determining how much weight to give the opinion. This has been incorporated into the regulatory scheme under §404.1527(d)(2) and

1:06 CV 2839                                             4

its SSI counterpart §416.927(d)(2), which require that the treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." This includes reporting : (1) treatment provided; (2) extent of examination; and (3) testing (20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii)). The ALJ *must* apply the regulatory factors of §416.927(d) when explaining why the treating source was not accorded controlling weight. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), quoting *Wilson*, 378 F.3d at 544. The ALJ also must consider the medical opinions "together with the rest of the relevant evidence." See 20 C.F.R. §416.927(b).

      The ALJ believed he had substantial evidence to reject Baker-Tuttle's claim that her chronic fatigue syndrome was disabling based upon these medical opinions plus evidence of her self-admitted capabilities to perform light housekeeping (TR. 40). The ALJ discredited Baker-Tuttle's claim of disabling chronic fatigue as contradicted by the medical reports from Dr. Grund, Dr. Viau and Dr. Granson (TR. 40).

      The ALJ noted that Dr. Grund reported that Baker-Tuttle asked for excuse from work but stated that she liked to work and that she needed to be gainfully employed (TR. 40). The ALJ apparently is referring to Dr. Grund's October 25, 1999 letter to Dr. Mandell (who diagnosed chronic fatigue) (TR. 177). Dr. Grund had reported, "Beginning in April of 1999, the fatigue began interfering with her ability to work and despite her protest that she likes to work, she has repeatedly requested excuses to miss work due to her fatigue . . . . She has persisted in her request for work absence stating that she was not able to return to work because of her fatigue" (TR. 177-78). Dr.

1:06 CV 2839                                                5

Grund stated he would defer to Dr. Mandell's opinion (*Id.*).  It is difficult to see in these remarks from Dr. Grund as detracting from the claim of disabling chronic fatigue.

Dr. Viau had performed spinal laminectomy in November 2001 (TR. 334).  In his follow-up notes the doctor prepared a residual functional capacity assessment in 2003 which was consistent with light work (TR. 431).  He noted that Baker-Tuttle complained about neck pain and headaches and he confirmed that there were bulging surgical discs without obvious foraminal stenosis and did not recommend surgery (TR. 432-33).   Dr. Viau, though, had not diagnosed chronic fatigue.  His concern was over Baker-Tuttle's back and most recently complaints of cervical spondylosis (TR. 432).  He restricted Baker-Tuttle to lifting and carrying 20 pounds with no other restriction (TR. 431).

The ALJ further relied on the report from another treating physician, Dr. Granson.  Dr. Granson had diagnosed chronic fatigue and fibromyalgia, in addition to chronic obstructive pulmonary disease and irritable bowel syndrom (TR. 435-436, 438).  His residual functional capacity assessment assigned a greater physical residual functional capacity to Baker with respect to lifting and carrying ability (25# rather than 20#) but he opined that Baker would be limited to four to six hours of walking or standing during the work day and that Baker was moderately limited in push/pulling, bending, reaching, handling or performing repetitive foot movements (TR. 437).

Dr. Patterson, on the other hand, opined that Baker-Tuttle was disabled.  This psychiatrist had been treating Baker-Tuttle since February 2000 and last saw her according to his most recent

1:06 CV 2839                                                6

report in September 20, 2000 (TR. 188). He diagnosed major depression, moderate to severe, single episode, in partial remission and dysthymia primary type, grief response, partially resolved (Baker-Tuttle's husband had had an affair) and relationship problems (TR. 187). He also noted possible chronic fatigue syndrome versus fibromyalgia "which appears to be a diagnosis of his exclusion on this client." *Id.* He noted that Baker-Tuttle was restricted in her daily activities by her energy level and she was often quite tired by mid-morning and requires a nap or at least some rest which she is reluctant to do for fear of not being able to get going again. He stated this impairment appears to be moderate in regards to her interests, habits and behavior and is compensated by her ability to force herself to do other things when she is tired (TR. 187). However in his opinion he believed that her fatigue ". . . was such that she should refrain from working. Hopefully within six months to a year we may be able to find something that may assist her with her problem and help decrease her depression and low energy level" (TR. 187). He concluded that Baker-Tuttle was disabled and not capable of performing work related activities "on a consistent basis and would be a poor employment candidate."

When the ALJ made his decision he ignored the opinion of the treating psychiatrist, Dr. Patterson (TR. 183-188). So the record contains two opposing opinions, one from Dr. Granson who acknowledges chronic fatigue but nonetheless determined that Baker-Tuttle could perform essentially light work as opposed to the psychiatric opinion from Dr. Patterson that from a mental aspect Baker-Tuttle is disabled by her low energy level. The original report from Dr. Mandell sheds no light on this discrepancy because he found the chronic fatigue to be "of multifactional etiology"

1:06 CV 2839                                         7

(TR. 176). Dr. Mandell, however, did note that Baker-Tuttle suffered from depression and alcohol abuse in the past and could find no systemic inflammatory disease which would contribute to her symptoms (TR. 176). Thus the emphasis appears to be on the psychological side.

As the preceding summary of the ALJ's findings show, this is a very close case. The Commissioner argues that the Sixth Circuit in *Wilson v. Commissioner of Soc. Sec.* stated that failure of the ALJ to acknowledge the opinion from a treating physician could be harmless error where the "treating source's opinion is so patently deficient the Commissioner could not possibly credit it[.]" 378 F.3d 541, 547 (6th Cir. 2004). In *Heston v. Commissioner of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001), the Sixth Circuit found that the failure to even acknowledge an opinion of the treating physician can under certain circumstances be harmless error where the physician provided no objective basis for the conclusion and the opinion was contradicted by the weight of other evidence. See also *Kornecky v. Commissioner of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. Feb. 9, 2006). Error also may be harmless, where the ALJ's analysis satisfied the goals of the regulatory evaluation procedure by indirectly attacking the treating physician's opinion. See *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747-750 (6th Cir. 2007); *Nelson v. Commissioner of Soc. Sec.*,, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006).

Dr. Patterson though provided psychological evidence. Dr. Patterson's opinion is not "patently deficient." In fact the ALJ found that Baker-Tuttle was significantly fatigued and that Dr. Mandell, who saw her in October 1999, diagnosed chronic fatigue syndrome (TR. 38, 175-76). The ALJ also noted that Baker-Tuttle reported decreased concentration and Dr. Grund who assessed the

1:06 CV 2839                                  8

claimant with depression saw her and then concluded, "These findings are sufficient to establish the severity of the claimant's impairments" (TR. 38). So it appears what the ALJ is stating is that Baker-Tuttle suffered from severe chronic fatigue syndrome related to mental impairment.

in regard to mental impairment, the ALJ found that Baker-Tuttle is "moderately limited" in her ability to maintain attention and concentration, perform activities within schedule, maintain regular attendance, complete a normal work day and work week without interruption and respond appropriately to changes in work setting (TR. 40). These findings apparently came from the mental residual functional capacity of nonexamining state agency physicians (TR. 250). However, the ALJ's analysis does not satisfy the goal of providing "good reason" to reject the opinion of disability from a treating physician. The ALJ in embraced and did not reject the underlying psychological foundation for Dr. Patterson's opinion of disability. Given the ALJ's acceptance of the underlying mental impairment, arguably he would have been swayed by Dr Patterson's opinion had the record been more carefully scrutinized.

The ALJ's analysis nowhere approached addressing supportability or consistency as required. Consequently, what in effect the Commissioner is requesting is for the court to be the fact-finder in this matter to sidestep an administrative resolution of the conflict between Dr. Granson and Dr. Patterson. The judicial function is to review for substantial evidence. In this circuit, the Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v.*

1:06 CV 2839                                                  9

*Secretary*, 17 F.3d 171, 176 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983).  It is clear that the ALJ's decision was clearly erroneous because the ALJ failed to consider an opinion from a treating physician. However, there is strong evidence of nondisability in the record and the court cannot become the fact-finder in these circumstances.

*Credibility:*

Baker-Tuttle had testified at the administrative hearing that a great deal of his problem was chronic fatigue which required a rest for 30 to 60 minutes during the day and affected her ability to concentrate (TR. 510, 515, 523-24).  "[C]redibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence." *Rogers.*, 486 F.3d at 249.  This court's role, consequently, is not to resolve conflicting evidence in the record or to re-examine the credibility of claimant's testimony.  See *Foster v. Halter,* 279 F.3d 348,353 (6th Cir. 2001); *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987) (*per curiam*); *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  Accordingly remand for the administrative reconsideration under the fourth sentence of 42 U.S.C. §405(g) of credibility issue is required under circuit precedent.

### *CONCLUSION*

For the foregoing reasons the ALJ's decision is not supported by substantial evidence and must be reversed and remanded under the fourth sentence of 42 U.S.C. §405(g) for reconsideration of the medical opinions with particular concentration to Dr. Patterson's report and opinion.  In so

1:06 CV 2839                                            10

doing, Baker-Tuttle should be free to include her exhibits in these remanded proceedings which the Appeals Council refused to consider when it denied the request for review (TR. 5-6).

                                                                  s/James S. Gallas
                                                          United States Magistrate Judge

Dated:   March 27, 2008